Good morning, may I please the Court, Evgeny Chechenin for the petitioner. I would like to reserve two minutes for rebuttal. You may speak a little louder for all of us here. Yes, Your Honor. In this case, Mr. Nguyen was provided ineffective assistance of counsel by his former attorneys Jennifer Scott and Ivan Porto, and the B.A., the Board of Avigation Appeals abused its discretion when it dismissed Mr. Nguyen's ineffective assistance claim for failure to comply with the procedural requirements of LAZADA. This Court has held that the LAZADA factors are not rigidly applied, especially where their purpose is fully served by other means. And it has also held that where the record demonstrates clear and obvious case of ineffective assistance... Well, what are the other means that you used here? Your Honor, the record here is clear, and it demonstrates a clear case of ineffective assistance of counsel, and I would like to have an opportunity to explain that. Did you raise that to the B.I.A.? Yes, the ineffective assistance of counsel claim was raised to the B.A. It also must be noted that from the beginning, immigration judge Mimi M. assumed the role of a prosecutor and refused to conduct a de novo hearing on Mr. Nguyen's... on the merits of Mr. Nguyen's application for asylum. Instead, she focused on certain aspects of his asylum claim, and Mr. Porto never raised an objection to the immigration judge's conduct. Your client admitted, didn't he, in the asylum interview that he had engaged or cooperated in torture? Your Honor, I believe that the issue of persecution... According to the asylum officer's notes, he admitted, yes. This was more the notes, wasn't it? The asylum officer actually appeared at the immigration hearing, didn't he? Yes, Your Honor. And read from the notes and said what the notes and said what your client told him. And also, your client signed, I think, the notes. That's according... Well, my client denied that, but according to the asylum... By signing it? At the hearing, he denied... Well, I'm sorry, Your Honor, he did not deny signing it, but he claimed that the contents of the notes were not explained to him, although he admitted that he signed it, that he signed the notes. Now, he later, in his own testimony, discounted that and said, no, he did not engage in torture, correct? Yes, Your Honor. So the immigration judge had before her... It was a woman? Yes, Your Honor. Had before her the evidence that he had engaged in torture, and his denial of that claim assessed the credibility and made a factual determination. What's wrong with that? Your Honor, the asylum officer testified at the removal hearing. However, Attorney Porter did not cross-examine the asylum officer for unknown reasons. The asylum officer provided testimony damaging to my client, and any attorney... Whose obligation is it to cross-examine? It's the obligation of the attorney who represented my client at that time. And he didn't cross-examine? I'm sorry? Did he cross-examine? No, he did not cross-examine. And the record shows that when he was offered the opportunity to cross-examine the asylum officer, he just refused to do it. He said that in his administrative record, page 134, when he was asked whether he wanted to cross-examine the asylum officer, Mr. Porter replied, well, no, actually I don't. This is all. It all fits in with his testimony. And I don't really understand how it all could fit within his testimony, because the asylum officer clearly stated something opposite to what... Well, counsel, were he to have cross-examined, what could he have developed? The officer said, I asked those questions, those were the answers. It's a hypothetical question, Your Honor, and... Guess what? We get to ask them. Yeah. So I... You're here saying that the counsel was ineffective for not cross-examining. Tell us what could have been done in that cross-examination, given the asylum officer's testimony. There are numerous possibilities. Tell us them. Give us a list. It is possible that the credibility of the asylum officer as a witness could be undermined... How? On cross-examination. How? Well, here's one example. Asylum officers process hundreds and thousands of asylum applications. They have no clear recollection of what happens at each individual asylum interview. But this asylum officer said, those are my notes, I recognize my handwriting, I remember having read the notes, I remember this case, I remember the questions I asked, I remember the answers that were given. Still, it is possible that a competent attorney in Mr. Porter's position could have impeached the asylum officer as a witness. Well, let's move on and say, okay, well, forget about these notes. No one challenges that your client delivered people knowing that they were going to go to this infamous room, too, and that they would there be tortured. Is that an accurate statement? I do not believe so, Your Honor. What's inaccurate about it? I believe that he interrogated people and he handed them over to authorities, and after that, he could only guess what happened with those people, since he did not know for sure. He heard rumors about the so-called Room 2, and he didn't actually know what happened at Room 2. In addition, what I would like to say is the Supreme Court issued a recent decision in which the court said that the Bay has to address the issue whether the persecutor bar applies to involuntary conduct, when the person was acting under duress and had essentially no other option. In this case, which is a little different from some that I have seen, this fellow was anti-communist. He was in the military, and his job was to ferret out communists and see what they could find out from them. He didn't have to do that, did he? He said he was a soldier, and I believe he reported to military superiors, so I do not believe he was at will not to do it. He was serving in a military or a paramilitary unit. That's my understanding. Now, let's then turn to what we should do next. Is he entitled to some type of cap relief? What are the current conditions in Vietnam? Your Honor, I see that my time is expiring. I would like to have some time for rebuttal. Could you answer my question? Yes, Your Honor. Well, the conditions have improved, but this petitioner suffered past persecution, and he was tortured. They have not approved to the degree that the past torture would not raise the presumption of future persecution and future torture. Let me ask you this. He was imprisoned on a couple of occasions in Vietnam, correct? Yes, Your Honor. And the last time he was released was February of 1983? I believe it was 1982. Okay, let's say 1982. And he came to the United States in 2001? Yes, Your Honor. And so between 1982 and 2001, he was living in Vietnam? He was, Your Honor. Without incident? Yes, Your Honor. Okay. We'll give you a minute for rebuttal. Thank you, Your Honor. Thank you. We'll hear from the Attorney General at this time. Your Honors, may it please the Court. Stuart Nickam on behalf of the Attorney General, Eric Holder, Jr. The fundamental issue in this case, and the basis on which this Court can and should resolve this case, is the fact that substantial evidence supports the immigration judge's adverse credibility determination, the determination that the petitioner suffered past persecution and future torture. The petitioner failed to offer credible testimony, credible and consistent testimony regarding his role in persecution of others. I think Your Honors pointed out some of the inconsistencies just a minute ago. He signed an asylum application in which there's a box that says, did you ever participate or did you ever harm others on account of race, religion, nationality, social group, political opinion? He checked the box, marked yes, and explained that he had been a member of a group which hunted down communists and tortured them. He made similar statements in the assessment by the asylum officer, saying that he had, in fact, beaten individuals who were suspected communists and had beaten them in an attempt to get information from them, and that he had then handed them over, he and his group had handed them over to another group which had tortured them. So he very clearly had stated that he had, in fact, engaged in acts which constitute persecution of others on account of a protected ground. And his testimony at the hearing, he denied that essentially, but he had no legitimate explanation for why he had previously stated in his asylum application and during the assessment to refer, no solid explanation for why he had said those things in the earlier application in the assessment. His only explanation was that somehow he hadn't said those things. And so, I mean, it's essentially a question of whether or not the immigration judge was permitted to believe the asylum officer and the asylum officer's testimony that he had recorded the answers and everything, or whether the immigration judge was somehow compelled to believe the petitioner's explanation that simply, that just bare denial of having made those statements. And so in this case... Did the immigration judge take into account that his actions, at least in part, were in aid of American armed forces? I don't believe the immigration judge made any assessment on that question. I don't think there was any evidence of direct U.S. involvement. Also, it really wouldn't... Well, the purpose, his job, whether you approve of the tactics involved or not, was to find Viet Cong sympathizers among villagers in South Vietnam, correct? That's correct, yes. And to the extent they were, in fact, Viet Cong sympathizers or members of the Viet Cong insurgent armed forces, their job was to kill Americans, wasn't it? That's correct, Your Honor, yes. And the immigration judge did not take this into account? I mean, there was nothing in the immigration judge's opinion that made... Isn't that something she should have taken judicial notice of? I mean, the adverse credibility determination, the finding that the petitioner engaged in persecution, it wasn't necessary for that additional fact to be present. I mean, the petitioner's participation in persecution of others is participation in persecution of others. We arranged to get a lot of Vietnamese people... My apologies, Your Honor. There's a jackhammer outside, and I'm actually a little bit deaf as it is, so I'm having a little bit of a hard time hearing you. We arranged, we Americans arranged to bring many Vietnamese who were helping our side to come to America. Now, how is he different from that group of people that we helped to get here? Well, first of all, there was a program. I don't know all the details of it, but there was a program. The immigration judge mentioned it regarding individuals who had been in detention facilities or re-education facilities, former members of the South Vietnamese military, and there was a specific program for them so that they could come to the United States. And in fact, the petitioner was asked why he didn't participate in that program. And he gave some sort of vague and contradictory responses, saying that he was aware of the program, but no, wait a minute, he wasn't aware of the program. He thought he could get in through his sister, could petition for him. And so there was a program for individuals who had been a part of the South Vietnamese military. He didn't take advantage of that program. Again, the issue here, though, is the adversarial determination and that his application for asylum was denied because he failed to offer credible testimony regarding his role in the persecution of others. Let's talk about the Convention Against Torture. Are you hearing me all right? Yes, yes. Let's talk about Cat for a moment. The question is whether it's more likely than not he would be tortured if returned to Vietnam. What's the current experience in Vietnam for individuals returning who not only participated in opposing the Viet Cong and the North Vietnamese Army, but also participated in the torture of Viet Cong sympathizers? Well, I mean, the issue here, the immigration judge made a determination that conditions in Vietnam had changed since 1982, or the last time the petitioner was arrested and detained. And the immigration judge's determination here is that conditions have changed such that the petitioner did not have a likelihood of being tortured if he was returned to Vietnam. That was based on the fact that... And what did she base that on? The fact that the petitioner's last arrest and last incidents of abuse and torture of him had occurred in 1982, I believe. The fact that he had remained in Vietnam without incident between 1982 and 2001 when he came to the United States. The fact that his family had remained without any incident. So it was an individualized determination as opposed to a general determination. That's correct, yes, yes. She did not make a determination that conditions had improved generally for people that fall in this category? There was nothing in the immigration judge... She didn't specifically state anything which would establish or generalize country conditions. It was a determination specific to the petitioner, yes, yes. Was there an indication of what it was he had done that constituted torture? His particular... The actions that the petitioner had engaged in that constituted torture? Pardon? The actions that the petitioner had engaged in that constituted torture? Yes. You're asking? Well, the petitioner doesn't need to have participated in torture to be barred from asylum, withholding removal or withholding under the CAT, although he was still eligible for a deferral of removal under the CAT. The petitioner simply needed to have engaged in persecution of others, not necessarily torture of others. So the petitioner himself... Well, what was the persecution? The petitioner said that he had engaged in beating with his hands and fists and kicking of petitioners suspected of being communist sympathizers. Now, he never gave any indication as to the severity of that harm. So he never said how badly these people were beat by him and his group. So in terms of his actual personal involvement, we know that he beat individuals to some degree of severity. We also know that he turned them over to individuals whom he was aware were engaging in torture or knew or suspected somehow were engaging in torture. He's been there about eight years? He came to the U.S. in 2001, yes, yes. Any criminal record? No criminal record, no, no. As far as we know... Well, yes, there's nothing in the record to indicate a criminal record. As far as we know, a good citizen. Yes, there's nothing in the record to indicate any... during his time here. Now, again, there's evidence as to what he did in the past. But here, no, there's no indication on that. Again, that... I mean, his... actions today are not relevant to the immigration judge's determination that he engaged in persecution of others in the past. He may be a wonderful citizen today, but the bar exists for people who engaged in persecution of others in the past. So... Okay, thank you for coming in today. Sorry about the jackhammer. It's all right. Counsel? I believe it's not necessary for this court to reach the issues of whether Mr. Nguyen persecuted others and the credibility issue. I believe that Mr. Nguyen was prevented from adequately presenting his case to the immigration judge and from addressing any inconsistencies in the immigration judge's basis for the adverse credibility. How was he prevented from presenting it? Well, one of the main reasons is that his attorney did not cross-examine the asylum officer and essentially there was only one-sided testimony from the asylum officer. We're talking about ineffective assistance of counsel. I'm sorry? We're talking then about ineffective assistance of counsel. Yes, Your Honor. And the problem there as I understand it, is that even if Lozada wasn't complied with, the attorney was not given time to respond. Well, the attorney was given time to respond. At least the VA clearly made a mistake when it said that the complaint was filed on the same day as the Mr. Nguyen's brief and that was clearly not the case. Clearly the complaint was filed about nine or ten days before the brief was filed with the board. That was a clear error. Okay. You're out of time, a little over your time. Thank you both for your argument. The case just argued will be submitted for decision.
judges: Hug, Fletcher B. , Hawkins